## Merrimack Sheet Metal, Inc. v. Liv-Mar, Inc.; D. D. Snyder & Son, Inc., Trustee

[511 A.2d 992]

No. 85-060

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed April 18, 1986

Neal C. Vreeland of Carroll, George & Pratt, Rutland, for Plaintiff-Appellee.

James B. Anderson of Ryan Smith & Carbine, Ltd., Rutland, for Trustee-Appellant.

**Hill, J.** Trustee, D. D. Snyder & Son, Inc. (Snyder), appeals the decision of the superior court adjudicating it liable to plaintiff, Merrimack Sheet Metal, Inc. (Merrimack), in the amount of $19,000 for paying funds in violation of its obligations as trustee. We reverse and remand for further proceedings not inconsistent with this opinion.

This is a collection action by Merrimack against Liv-Mar, Inc. (Liv-Mar) to recover the purchase price of plumbing supplies sold on open account. Merrimack obtained judgment by default against Liv-Mar in the amount of $18,542.16; the judgment remains unsatisfied.

Liv-Mar is a plumbing subcontractor. In September 1983, it entered into a plumbing subcontract with Snyder relative to the Trail Creek Condominium Project in Killington, Vermont. Pursuant to the terms of this contract, Liv-Mar was to purchase and install plumbing fixtures in the condominium project. Liv-Mar contracted with Central Supply, Inc. (Central Supply) to provide the plumbing supplies Liv-Mar was obligated to provide under the terms of the subcontract.

In November 1983, Liv-Mar breached its plumbing subcontract with Snyder. After Snyder determined that no other plumbing contractors were available to replace Liv-Mar, Snyder and Liv-Mar entered into an oral labor-only contract under which Snyder agreed to pay Liv-Mar the actual wages of its employees for work performed on the project. The earlier subcontract was abandoned, Liv-Mar having been fully compensated for services provided up to that time. The new contract provided that Liv-Mar employees would do all the plumbing work on the project, but under the supervision of the general contractor.

At the time the original plumbing subcontract was abandoned, Liv-Mar owed Central Supply $25,000 for plumbing fixtures. The trial court found that Central Supply required Snyder to guaran-

tee Liv-Mar's debt. Snyder contests this finding; however, it does not dispute that it thereafter paid Central Supply for materials ordered by Liv-Mar for which Liv-Mar remained liable.

In January 1984, Merrimack petitioned the court to attach "goods, effects, or credits" of Liv-Mar in the hands of Snyder in accordance with V.R.C.P. 4.2. The court found that there was a reasonable likelihood that Merrimack would recover judgment against Liv-Mar, and, on January 26, 1984, Merrimack served Snyder with prejudgment trustee process in the amount of $19,000.

After receiving notice of the attachment, Snyder made payments to Central Supply totaling $25,077.44. Weekly payments totaling $27,092.90 were also made to Liv-Mar to cover the wages of its employees, including the principals in the corporation, Clifford Martin and Tom Livsee.

Merrimack asserts that both of these amounts were property subject to trustee process, and paid in derogation of Snyder's duties as trustee. Snyder counters by arguing that amounts paid to Liv-Mar were exempt from trustee process under 12 V.S.A. § 3021 as they were paid to Liv-Mar to compensate employees for services rendered on the Trail Creek Project. With regard to payments made to Central Supply, Snyder maintained that such payments did not constitute goods, effects, or credits of Liv-Mar in the hands of Snyder, and therefore, under 12 V.S.A. § 3013, were not subject to trustee process.

The trial court found that the wage payments benefited Liv-Mar, and that Central Supply never released Liv-Mar of its obligation to pay for the plumbing and heating supplies it ordered. Based on these findings, the trial court concluded that both amounts were paid in violation of Snyder's duty as trustee, and it adjudged Snyder liable to Merrimack for the $19,000 originally trusteed. Snyder appealed.

■ Property which is subject to trustee process consists of "goods, effects or credits of the defendant which are in the hands of [the] trustee at the time of the service of the writ upon him . . . ." 12 V.S.A. § 3013. Although a trustee's indebtedness to the judgment debtor is clearly subject to attachment, the debt reached must be one that is in fact due the judgment debtor. *First Wisconsin Mortgage Trust* v. *Wyman's, Inc.*, 139 Vt. 350, 353-54, 428 A.2d 1119, 1122 (1981); see also *Corey* v. *Powers*, 18 Vt. 587, 590 (1846).

Snyder contends that in purchasing plumbing supplies from Central Supply it was discharging a contractual obligation owed Central Supply rather than a contractual duty owed Liv-Mar. We agree. The contract existing between Snyder and Liv-Mar when the order for trustee process was served on Snyder was for labor only. It did not give Liv-Mar an enforceable right against Snyder for payment of the debt Liv-Mar owed to Central Supply for plumbing supplies ordered under the pre-existing plumbing subcontract between Snyder and Liv-Mar.

■ The trial court found that Snyder guaranteed Liv-Mar's obligation to Central Supply. As Snyder correctly notes, however, a guaranty is an " 'undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily.' " *Twin City Co-op Credit Union* v. *Bartlett*, 266 Minn. 366, 369, 123 N.W.2d 675, 677 (1963) (citation omitted). The principal is not a party to the guaranty contract, and the guarantor is not a party to the principal's contract with the creditor. 38 Am. Jur. 2d *Guaranty* § 4. In short, assuming the trial court's findings are correct, Snyder, as guarantor, did not owe a contractual duty to Liv-Mar. Thus, as Liv-Mar cannot maintain an action to enforce the alleged guaranty, Snyder's obligation to Central Supply is not subject to trustee process. That Snyder's payments to Central Supply may have benefited Liv-Mar is of no consequence to this analysis.

We next consider Snyder's assertion that amounts paid to Liv-Mar were exempt from trustee process under 12 V.S.A. § 3021 as wages for work done in the performance of a contract out of which the trustee's indebtedness arose.

■ The language in 12 V.S.A. § 3021 is mandatory:

In *all* cases where a principal defendant is indebted to other persons for work done in the performance of a contract out of which the trustee's indebtedness arises, there *shall* be exempt from the trustee process . . . such sum or sums as may be due from the principal defendant to such other persons for work done in the prosecution of such contract.

(Emphasis added). The statute's purpose is clear: it is designed to protect employees of the principal defendant from having their wages trusteed by their employer's creditors.

The trial court concluded that the statutory exemption was inapplicable; however, its reasoning on this point is not clear. The court intimated that such payments benefited Liv-Mar, and were therefore subject to trustee process. This analysis is not persuasive. Indeed, wage payments will always benefit the principal defendant who is the employer and primarily liable for the wage claims of its employees.

By its terms, the statute provides that Merrimack may not trustee amounts due Liv-Mar from Snyder for work done under the labor-only contract between Liv-Mar and Snyder. Merrimack contends that Snyder waived the protection of this exemption by failing to summon "as claimants before the court in which [a trustee] action so brought is pending, all such other persons to whom he is indebted for work so done." 12 V.S.A. § 3021. The statute, however, plainly states that it is the principal defendant, not the trustee, who must cause such persons to be summoned before the court. *Id.*

While we agree with Merrimack that the trustee bears the burden of establishing the facts necessary to claim the exemption under 12 V.S.A. § 3021, we also believe that Snyder met its burden in this regard. The court in this case found that Snyder made weekly payments to Liv-Mar to cover the wages owed to Liv-Mar's employees,* and that Liv-Mar in turn paid its employees who worked on the Trail Creek Project, including the principals of Liv-Mar, Clifford Martin and Tom Livsee. Although the court was unable to find who actually issued the paychecks to the plumbing workers, the record clearly shows that Snyder provided Liv-Mar the sums necessary to meet its weekly payroll after it reviewed the weekly time slips. The statute mandates that these sums be exempt from trustee process, and the trial court erred in concluding otherwise.

The exemption under 12 V.S.A. § 3021 applies only to indebtedness to other persons for work done in the performance of the labor-only plumbing contract; it does not apply to profit. Although the record reveals uncontradicted testimony that pay-

---

* The trial court found that payments made after January 27, 1984 were made to "Clifford G. Martin Plumbing," but that they were made for the same purpose.

ments made to the principals of Liv-Mar were made for work done in the performance of the contract, the trial court made no specific finding on this issue. Consequently, the case must be remanded for additional findings of fact as to whether the whole amount of payments made to the principals of Liv-Mar represented wages for work performed on the project.

Because we reverse the trial court's rulings regarding payments made to Central Supply and Liv-Mar, we do not address Snyder's remaining claims of error. See *State* v. *Comes*, 144 Vt. 103, 108, 472 A.2d 1253, 1256 (1984) (court need only address issues warranting reversal). We note in closing that Snyder admitted liability in the amount of $2988.13 for travel expenses paid to Liv-Mar after service of the trustee process. Thus, Merrimack is entitled to judgment in that amount.

*Reversed and remanded for further proceeding not inconsistent with this opinion.*