**METROPOLITAN LIFE INSURANCE COMPANY, Appellant,**

v.

**Charles M. CHRISTISON, et al., Respondents.**

**No. C8–89–1389.**

Court of Appeals of Minnesota.

Feb. 6, 1990.

G. Martin Johnson, II, Blaeser and Johnson, P.A., Minneapolis, for appellant.

Robert G. Rochford, Plainview, for respondents.

Considered and decided by SHORT, P.J., and RANDALL and STONE,[*] JJ.

OPINION

SHORT, Judge.

Metropolitan Life Insurance Co. (Metropolitan) appeals from the trial court's grant of summary judgment in favor of respondents Charles and Sheldon Christison. The action is based on two notes executed as part of loan transactions. The trial court held Minn.Stat. § 582.31 (1988) barred the action because Metropolitan had previously foreclosed on the underlying mortgages. We affirm.

---

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## FACTS

The material facts of this case are undisputed. Respondents Charles Christison and his son, Sheldon, are the majority shareholders of Modern Trend Co., a Minnesota corporation. Modern Trend's assets, at the time of its incorporation in 1971, included machinery, equipment, inventory, livestock and an interest in two tracts of land.

In 1975, Modern Trend refinanced one of its farms through Metropolitan, a New York corporation authorized to do business in Minnesota. The parties executed three documents dated January 16, 1975: a mortgage note, an interest note, and a mortgage. The mortgage note stated, in part:

> For value received, we promise to pay to the order of the Metropolitan Life Insurance Company * * * the sum of [$120,-000].
>
> *   *   *   *   *   *
>
> It is agreed and understood that this note is * * * secured by a Real Estate Mortgage of even date herewith, which is a first lien on the property therein described.

Charles M. Christison signed the note as President of Modern Trend, and Lester J. Christison signed as Secretary. The signatures of Charles and Lester Christison appear on the note a second time without words of qualification, designation or guarantee. The interest note was signed in the same manner. The mortgage was signed only by Charles and Lester Christison in their capacities as officers of Modern Trend.

In 1978, Modern Trend applied to Metropolitan for a second loan to buy out the interests of Lester Christison and his son. Again, the parties executed a mortgage note, an interest note, and a mortgage. All were dated March 21, 1978. The mortgage note was for $72,000. Sheldon Christison signed as President of Modern Trend, and Charles Christison signed as Secretary–Treasurer. Both signed a second time without words of qualification, designation or guaranty. Except for the amount and the dates of repayment, the terms were identical to those of the 1975 mortgage note.

Metropolitan foreclosed under both mortgages in October of 1987. Metropolitan bid $110,000 for the land described in the 1975 mortgage, and $1 for the land described in the 1978 mortgage (which was the same land described in the prior mortgage).

The amount remaining due on the 1975 note was $26,690.35. The amount remaining due on the 1978 note was $78,853.26. On May 18, 1988, Metropolitan filed a contract action for the net amount due on the notes of $105,543.61. The complaint named as defendants Charles and Sheldon Christison as individuals, and Modern Trend. On June 5, 1989, the district court entered summary judgment in favor of Charles and Sheldon Christison. Metropolitan appeals.

## ISSUE

Does Minn.Stat. § 582.31 (1988) bar Metropolitan's action against respondents?

## ANALYSIS

In reviewing an entry of summary judgment, this court must review the record to determine whether any material fact is in dispute and whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979); Minn.R.Civ.P. 56.03. Because this appeal involves only a question of the meaning of Minn.Stat. § 582.31, summary judgment is appropriate.

The statute provides:

582.31 ONE ACTION ALLOWED TO ENFORCE AGRICULTURAL MORTGAGE.

(a) For a mortgage on property used in agricultural production entered into on or before March 22, 1986, the mortgagee may only proceed to:

(1) obtain a personal judgment for the debt owed on the note secured by the mortgage and execute on the judgment; or

(2) foreclose the mortgage and obtain a deficiency judgment, if allowed.

(b) An action under paragraph (a), either clause (1) or (2), bars an action under the other clause.

The parties do not dispute that the mortgages in question were on property used in agricultural production, or that the mortgages were entered into before 1986. Nor do the parties dispute that Metropolitan foreclosed both mortgages.

Metropolitan admits it is barred under the statute from suing the mortgagor (Modern Trend). It contends, however, that Charles and Sheldon Christison are guarantors, and that section 582.31 does not bar an action against guarantors. We first must characterize respondents' obligation to Metropolitan, and then determine whether the statute bars an action based on that obligation.

A. Respondents are liable as makers of the notes.

■ The notes are negotiable instruments governed by the Uniform Commercial Code Commercial Paper, Minn.Stat. § 336.3–101 to –805 (1988). See Minn.Stat. § 336.3–104. A signature on a note is an endorsement unless the note clearly indicates otherwise. Minn.Stat. § 336.3–402. The words "we promise to pay" preceding the signatures clearly indicates the signers are not endorsers, but are makers. Minn. Stat.Ann. § 336.3–402, Uniform Commercial Code Comment (West 1966). Furthermore, the use of the pronoun "we" indicates more than one maker. Unless the note specifies otherwise, two or more persons who sign as maker as a part of the same transaction are jointly and severally liable. Minn.Stat. § 336.3–118(e). The maker is liable to pay the note according to its tenor. Minn.Stat. § 336.3–413(1). One who signs for another without indicating the representative capacity on the note is personally liable. Minn.Stat. § 336.3–403(2)(a).

Appellants might be characterized as accommodation parties. See Minn.Stat. § 336.3–415(1). A maker of the note who is an accommodation party may have a right of recourse against the party accommodated. Minn.Stat. § 336.3–415(5). The accommodation party's liability to the note holder, however, is in the capacity in which the accommodation party signed. Minn. Stat. § 336.3–415(2).

A guaranty contract may be created by complying with Minn.Stat. § 336.3–416. However, some words of guaranty are required. Id.; see also Twin City Co-op Credit Union v. Bartlett, 266 Minn. 366, 369, 123 N.W.2d 675, 677 (1963) (holding no guaranty created where notes named comaker and contained no collateral undertaking or promise of guaranty).

In this case, Charles Christison signed both mortgage notes without designating a representative capacity. Sheldon Christison signed the 1978 note without such a designation. No language indicated a guaranty contract was created. We hold as a matter of law that respondents were not guarantors, but were personally and primarily liable on the notes as makers. See Jenista v. Burlington Northern Airmotive, Inc., 388 N.W.2d 770, 773 (Minn.Ct. App.1986).

B. Minn.Stat. § 582.31 protects all makers of the note secured by the mortgage.

■ Because Metropolitan foreclosed on the mortgages, section 582.31 prohibits an action to "obtain a personal judgment for the debt owed on the note secured by the mortgage." Metropolitan's present action is based on the legal obligation created by the note secured by the mortgage; thus, the action is barred. We do not find any ambiguity in the statute and decline to resort to other means of determining legislative intent. See Minn.Stat. § 645.16 (1988) (when words of a law are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit).

We are aware of the conflicting case law in other jurisdictions on the issue of whether guarantors are protected by antideficiency legislation. See Annotation, Mortgages: Effect Upon Obligation of Guarantor or Surety of Statute Forbidding or Restricting Deficiency Judgments, 49 A.L.R.3d 554 (1973); G. Nelson & D. Whitman, Real Estate Finance Law § 8.3 at 606–07 (2d

ed. 1985). We note also that the debate in Minnesota has been settled for almost a decade with respect to another antideficiency statute, Minn.Stat. § 580.23 (1988). *See Victory Highway Village, Inc. v. Weaver,* 634 F.2d 1099, 1102–03 (8th Cir.1980) (holding Minnesota antideficiency statute does not bar action against guarantor); *National City Bank v. Lundgren,* 435 N.W.2d 588, 591–92 (Minn.Ct.App.1989) (approving and adopting holding of *Victory Highway*), *pet. for rev. denied* (Minn. Mar. 29, 1989). *But see Americana State Bank v. Jensen,* 353 N.W.2d 652, 656 (Minn.Ct.App. 1984) (holding consumer antideficiency legislation bars action against guarantor). However, we do not decide whether Minn. Stat. § 582.31 applies to guarantors because the defendants in this action are not guarantors.

## DECISION

Respondents personally signed the notes as makers, and Minn.Stat. § 582.31 protects all makers of a note after the lender has foreclosed on the underlying mortgage.

Affirmed.